**IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

IN RE:

DANIEL R. OSTEEN and
RHONDA G. OSTEEN,                              CASE NO. 09-63551
                Debtors.                              CHAPTER 13
_____

DANIEL R. OSTEEN and
RHONDA G. OSTEEN,                              ADVERSARY PROCEEDING

         Plaintiffs,                                  No.
vs.

RICHARD T. CREGGER, TRUSTEE;
SAXON MORTGAGE SERVICES, INC;
OCWEN LOAN SERVICING, LLC.;
RALPH E. MAIN, JR., TRUSTEE;       and
AMERICAN GENERAL FINANCIAL SERVICES, INC.,

         Defendants.

**COMPLAINT TO AVOID TRANSFER, RESCIND A CONSUMER CREDIT
TRANSACTION, AND OBTAIN OTHER DECLARATORY AND AFFIMATIVE
RELIEF**

NOW COME Daniel R. Osteen and Rhonda G. Osteen, (the "Debtors") by counsel, and for their Complaint state as follows:

**Introduction**

1. The Debtors bring this adversary proceeding in order to resolve issues related to two creditors' claims secured, or purportedly secured, by their home. A loan originally made by WMC Mortgage Corp. (the "WMC Loan") that as of commencement of the Debtors' Chapter 13 case was serviced by Saxon Mortgage Services, Inc. ("Saxon") was originally intended by the creditor to be a first lien; however the lender failed to record its Deed of Trust. The Debtors, who have always been current on the loan, were sued by Richard Cregger, Trustee on the WMC Loan Deed of Trust, which led to their signing a document prepared Mr. Cregger's counsel attempting to fix the problem; yet by that time American General Financial Services, Inc. had recorded a Deed of Trust to secure a loan (the "American General Loan") originally intended to be a second lien. However, the Debtors contend that the issue of the priority of the two mortgage liens is moot, because neither lien is valid, in that the WMC Loan corrective instrument is avoidable under Bankruptcy Code §548(a)(1)(B), and the American General Loan is rescindable under the Truth in Lending Act. Finally, the Debtors have a related claim against Saxon under §131(f) of the Truth in Lending Act for repeated failure to disclose the name of the current real party in interest owning the WMC Loan debt obligation, a fact still unknown to the Debtors. The Debtors' specific allegations regarding all of these matters are set forth below.

1

### Jurisdiction

2. This is a core proceeding as defined in 28 U.S.C. §157(b)(2), and accordingly this Court has jurisdiction to hear this case pursuant to 28 U.S.C. §157(a).

### The Defendants and the Loans

3. Richard T. Cregger, Trustee ("Cregger") is the is the Trustee of the original Deed of Trust executed in connection with the WMC Loan. His only known address is c/o his attorney in that proceeding, John E. Renaldi, Esq., Walsh, Colucci, Lubeley, Emrich & Walsh, P.C., 4310 Prince William Pkwy, Suite 300, Prince William, VA 22192. Cregger is listed in the alleged first Deed of Trust "as Trustee for Mortgage Electronic Registration Systems, Inc [("MERS")] as beneficiary."

4. Saxon Mortgage Services, Inc. ("Saxon") is a mortgage servicer having a place of business in Fort Worth, Texas 76137 and a mailing address of P.O. Box 163405, Fort Worth, Texas 76161. Commencing prior to 2009 and through November 15, 2009 Saxon was the servicer of the WMC Loan.

5. Ocwen Loan Servicing, LLC ("Ocwen") is a mortgage servicer having a place of business in Orlando, Florida and a mailing address of P.O. Box 785057, Orlando, FL 32878-5057. On November 16, 2009 Ocwen became the servicer of the WMC Loan.

6. American General Financial Services, Inc. ("American General") is a financial services business corporation, not a federally insured institution, whose registered agent in Virginia is Corporation Service Company, 11 South 12th St., Richmond, Virginia 23218.

7. Ralph E. Main, Jr. Trustee ("Main") the is the Trustee of the Deed of Trust recorded to secure the American General Loan (the "American General Deed of Trust"). American General and Main are referred to collectively as the "American General Parties".

### Facts Relating to all Matters at Issue

8. The Debtors' property conveyed in all relevant real estate instruments (the "Property") is located in Fluvanna County at 196 Rising Sun Road, Palmyra, Virginia 22963, is designated as Lot 12 Wilmington Heights Subdivision, and was conveyed to the Debtors by deed dated May 28, 1988 of record in the Fluvanna County Circuit Court Clerk's Office in Deed Book 190, page 377.

9. The Property is the Debtors' principal residence as that term is used for purposes of the Bankruptcy Code.

10. On December 12, 2006 the Debtors closed the WMC Loan. The transaction was not for purchase money. The WMC Loan proceeds paid of the prior first lien mortgage on the Property.

11. On July 25, 2007 the American General Deed of Trust was recorded in the said Clerk's Office in Deed Book 798, page 925. (Debtors' Initial Exhibits, .pdf pages 1-5).

12. WMC Mortgage Corp. or its closing agent never recorded the original WMC Deed of Trust. In 2008 Cregger brought suit against the Debtors in the

2

Fluvanna County Circuit Court, Case 08-CV-210 seeking relief for this error. (Copy of Complaint:Debtors' Initial Exhibits, .pdf pages 6-12).

13.  The attorneys representing the Plaintiff and the Osteens in Case 08-CV-210 signed a Settlement Agreement dated "May ___, 2009" (the "Settlement Agreement"). (Debtors' Initial Exhibits, .pdf pages 13-15).

14.  The Osteens executed a "Deed of Confirmation of Deed of Trust" dated "February ___, 2009" prepared by counsel for Cregger which Cregger caused to be recorded on July 27, 2009 in the Fluvanna County Circuit Court Clerk's Office in Deed Book 798, page 925. (Debtors' Initial Exhibits, .pdf pages 16-26).

15.  On October 29, 2009 Creggar filed a Motion to Non-Suit as to the Debtors in the Fluvanna County Circuit Court proceeding and caused to be recorded in the said Clerk's Office a Certificate of Partial Release of the Memorandum of Lis Pendens that he previously had recorded against the Property in connection with that case. (Debtors' Initial Exhibits, .pdf pages 27-31).

**First Prayer for Relief: Avoidance of the WMC Deed of Confirmation of Deed of Trust pursuant to Bankruptcy Code §548(a)(1)(B)**

16.  The Settlement Agreement provided that the Debtors would promptly execute the Deed of Confirmation of Deed of Trust and that Cregger would promptly dismiss the lawsuit against the Debtors and request release of the Lis Pendens. The Debtors promptly performed their end of the bargain, but Cregger did not.  Other than accept and record the Deed of Confirmation of Deed of Trust, Cregger did nothing until October 30, 2009 (five days prior to the debtors' Chapter 13 filing) when he filed a motion to Nonsuit (not dismiss) as to the Debtors and for partial (not full) release of the Lis Pendens.

17.  Upon information and belief, Cregger took those belated and inadequate steps steps motivated primarily by his having learned that the Debtors might soon be filing bankruptcy.

18.  The recited reason why the Debtors agreed to sign and deliver the Deed of Confirmation of Deed of Trust was as follows: "the Parties desire to avoid any further conflict arising out of the Lawsuit, and to resolve and settle all disputes, claims, allegations, charges, issues, differences, or matters pertaining thereto." Settlement Agreement, page 1. Cregger had not raised any "disputes, claims, allegations, charges, issues, differences, or matters" against the Debtors, because they had done nothing wrong. The sole purpose and incentive for the Debtors was "to avoid any further conflict [and expense] arising out of the Lawsuit". Yet even this minimal consideration was not delivered. Cregger failed to take any act for over three months after the Debtors gave him the desired document, and then only on the eve of bankruptcy, and then only partially performing his obligation under the Settlement Agreement. Literally, too little, too late.

19.  Cregger refused to pay the legal expenses that the Debtors incurred in seeking help defending themselves from a Complaint crafted in such a way as to create the utterly false appearance that the Debtors has done something wrong (e.g. reference to "fraud", Cregger Complaint ¶27 (Debtors' Initial Exhibits, .pdf page 10). The Debtors incurred additional expenses in attempting to obtain performance from Cregger after they had fully performed their side of the settlement. Relief from artfully imposed and baseless pressure on a homeowner to bail a mortgage lender

3

out of its own mistake does not constitute valid consideration for a confirmatory re-conveyance of a lien on a home.

20.  For the reasons above, the Debtors received less than reasonably equivalent value for their consent to the execution and delivery of the Deed of Confirmation of Deed of Trust.

21.  The Debtors were insolvent at the time of, or became insolvent as a result of, their consent to the execution and delivery of the Deed of Confirmation of Deed of Trust.

22.  Throughout the events described above the Debtors remained current on their payments on the WMC Loan, and continue to be current. The Debtors seek a fair and just resolution, not a "free house".

23.  WHEREFORE the Debtors pray that the Court enter an order determining that the Deed of Confirmation of Deed of Trust and the recordation thereof are avoided and of no legal effect pursuant to Bankruptcy Code §548(a)(1)(B); that prior to entry of any such Order the Debtors be afforded further opportunity to be heard so that any Order entered herein may be found to be in their best interests; and for such other relief as the Court determines to be appropriate.

### Second Prayer for Relief: Rescission of the American General Loan

24.  The Property is the Debtors' principal dwelling as that term is defined in §127a of the Truth in Lending Act, 15 U.S.C §1637a.

25.  Origination of the American General Loan was subject to the provisions of the Home Owner's Equity Protection Act ("HOEPA"). HOEPA requires a pre-closing disclosure to the borrowers containing certain information, including the Annual Percentage Rate ("APR") of the loan. The disclosure given to the Debtors dated June 13, 2007 (the "HOEPA Disclosure") stated that the APR would be 15.15%. (Debtors' Initial Exhibits, .pdf page 32).  In fact however the APR was 19.53%. (Debtors' Initial Exhibits, .pdf pages 33-34).

26.  Under the Truth in Lending Act, American General's failure to accurately state the APR in the HOEPA Disclosure entitled the Debtor's to rescind the loan for a period of three years. Title 15 United States Code (U.S.C.) § 1635. The Debtors rescinded the loan by mailing a Notice of Rescission to American General that was received by American General on October 13, 2009. (Debtors' Initial Exhibits, .pdf pages 35-36).

27.  The Notice of Rescission did not automatically complete the rescission. Under the Truth in Lending Act in order to be entitled to full release from the rescinded transaction must tender back the loan proceeds. American Mortgage Network v. Shelton, 486 F.3d 815 (4th Cir. 2007).  When so doing the borrower is entitled to have the amounts already paid to the creditor applied entirely to principal, and the is also entitled to a credit equal to the amount of closing costs paid to the creditor.

28.  WHEREFORE the Debtors pray that the Court enter an order directing American General to render a statement of the amount required to be tendered calculated in accordance with the rules provided under the Truth in Lending Act for rescinded transactions, crediting the full amount of payments to date and all closing costs against the principal balance, and declaring that upon payment of such amount

in full by the Debtors as a separately classified claim under the Debtors' Chapter 13 Plan to be modified for that purpose, the Debtors shall have fully satisfied their obligations to American General, and for such other relief as the Court determines to be appropriate.
.
### Alternative (Third) Prayer for Relief: Determination of Priority of Liens

29.  In the event that notwithstanding the Debtors' First and Second Prayers for Relief set forth above, both the WMC Loan and the American General Loan are determined to be secured by liens on the Property, a determination of priority as between those two liens would be necessary in order for the Debtors to finalize their Chapter 13 plan and obtain the benefits of Chapter 13.

30.  The Fluvanna County Circuit Court has rendered no decision in Case 08-CV-210 and until that action was stayed by Bankruptcy Code §362(a) Cregger and American General Parties) continued to be at issue in that case as to the priority of liens.

31.  The Debtors are at the outset neutral stakeholders at to this Third Prayer for Relief although they remain parties in interest entitled to be heard before any final determination is made.

32.  WHEREFORE the Debtors pray that their First and Second Prayers for Relief be granted as requested; alternatively the Debtor's pray that Cregger and the American General Parties be directed to file memoranda of law as to the priority of their respective liens; that thereafter the Debtors be afforded due opportunity to be heard; and that the Court enter an order determining the respective priorities, and for such other relief as the Court determines to be appropriate.

### Alternative (Fourth) Prayer for Relief: Declaratory Judgment that the American General Loan is Unsecured pursuant to Bankruptcy Code § 506(a).

33.  In the event that notwithstanding the Debtors' First and Second Prayers for Relief set forth above, both the WMC Loan and the American General Loan are determined to be secured by liens on the Property, and the WMC Loan's lien is determined to have priority over the American General Deed of Trust, then upon information and belief the American General Loan is wholly unsecured.

34.  The outstanding principal balance of the WMC Loan as set forth in the Debtors' Schedule D is $140,300.00.

35.  The value of the Property as determined by the Fluvanna County Tax Assessor for 2009 is $147,000.00.  This represents a 64% increase over the 2007 tax assessed value, which was $89,300.00. Other properties on Rising Sun Road and in other areas of Fluvanna County have experienced similarly massive or even larger increases in tax assessed value since 2007.

36.  The Debtors believe that an appraisal or broker's price opinion if obtained is likely to show the current market value of the property to be less than $140,300.00.  Because this issue may become moot due to the outcome of the other causes of action above, the Debtors have not yet gone to the expense of obtaining a price opinion.

37.  WHEREFORE the Debtors pray that in the event this cause of action is not moot upon disposition of their other causes of action set forth above that they be

afforded an opportunity to submit further evidence of the value of the Property, and upon so doing that this Court enter an Order determining that the American General Loan is wholly unsecured and must be stripped from the Property in accordance with Bankruptcy Code § 506(a).

### Fifth Prayer for Relief: Saxon's Violation of 15 U.S.C. §1641(f).

38.  The Property is the Debtors' principal dwelling as that term is defined in §127a of the Truth in Lending Act, 15 U.S.C §1637a.

39.  Section 131(f) of the Truth in Lending Act [15 U.S.C. §1641(f)] provides that upon written request by a borrower, the servicer of a debt obligation secured by the borrower's principal dwelling must identify the holder or master servicer of the debt obligation.

40.  Section 6(e)(1) of the Real Estate Settlement Procedures Act ("RESPA") [12 U.S.C. §2605(e)(1)] provides that servicers must respond to requests defined by RESPA as "qualified written requests" within 20 days.

41.  On September 23, 2009 the Debtors, through counsel, mailed a qualified written request to Saxon, the servicer at that time of the WMC Loan, requesting to be told the identity the current holder of the mortgage Note signed by them. Saxon received the Debtors request on September 28, 2009. (Debtors' Initial Exhibits, pages 37-38).

42. Saxon responded with a package containing a cover letter and copies of the standard borrower "hello letter" that had been mailed to the Debtors in 2007, the Note, and the Deed of Trust, none of which contained any reference to or information about the identity the current holder or master servicer of the mortgage Note.

43.  As of the date of this Complaint Saxon has not provided any information about the identity the current holder or master servicer of the mortgage Note. As a result Saxon has violated 15 U.S.C. §1641(f) and 12 U.S.C. §2605(e)(1) with respect to the Debtors' September 23, 2009 request.

44.  WHEREFORE the Debtors pray that this Court enter an Order awarding the Debtors damages of $4,000 plus their reasonable attorney's fees against Saxon as provided by 15 U.S.C. §1640(a) as the statutory remedy for a violation of 15 U.S.C. §1641(f).

        Respectfully submitted,
        DANIEL R. OSTEEN
        RHONDA G. OSTEEN
        By Counsel

  /s/ Richard D. Shepherd        Date: November 18, 2009.

Richard D. Shepherd
VSB #19976
P.O. Box 1045, Troy, VA 22974-1045
(434) 242-0329
e-mail: richard@CentralVaLaw.com
Counsel for Debtors

6